3-19-0489 Quality Transportation Services, Appellant v. Mark Thompson Trucking, Appallee Thank you. Good afternoon to both of you. Ms. Sweiss? Sweiss, Your Honor, yes. Anytime you're ready, you can start. Thank you, Your Honor. May it please the court and opposing counsel. We are here today basically to discuss why this court should overturn a bench trial judgment. That is the question we have placed before the court and that is what I would like to discuss with you this afternoon. The short answer is that the trial court improperly used its second bite at the apple to shore up its original ruling, which this court had initially reversed by recharacterizing its legal conclusions as factual conclusions. However, the meaning of this contract that's at issue in this case is a conclusion of law. Whether or not Mark Thompson Trucking solicited U.S. Silica within the meaning of their transportation brokerage agreement is a conclusion of law. The trial court's characterization of its findings as findings of fact in that regard was therefore in error. Before you start, can I just ask you one question? Yes. Some contracts, restrictive covenants might say you can't do work for any of our clients. And this one didn't say that, didn't say you can't do work for them, it said you can't solicit them. Correct. And so is that an important difference between this covenant and maybe others we see? It is different in that it prescribes a narrower type of conduct. So, correct. Our position, QTS's position in this has never been that Mark Thompson Trucking was prohibited from working for U.S. Silica in general. The issue is did he improperly take affirmative action to solicit that business? It's been our position throughout this that it's not a matter of he's not allowed to go work for customers of QTS. That would be much more restrictive if he even allowed to work for any customer. This is purely limited to he can't solicit that business. And his conduct in that regard, how he acted in that regard is a question of fact. But ultimately, whether that conduct resulted in solicitation is a legal conclusion. The facts in this case are not disputed. It's not disputed that U.S. Silica through its transportation coordinator Janice Casey made the first contact. Janice Casey is first reached out to Mark Thompson to see if Mark Thompson Trucking would be interested in driving for U.S. Silica or hauling loads for U.S. Silica. It's not, it's undisputed though that once she made that initial contact, it was incumbent on Mark Thompson or Mark Thompson Trucking to formulate a bid and submit a bid if he was interested in getting that business. It's undisputed that if he wanted that business, he was going to have to come up with a bid that was lower than what other bidders had submitted. Because it's also undisputed that Janice Casey was not specifically seeking Mark Thompson Trucking necessarily to haul these loads for U.S. Silica. She was advertising to all kinds of carriers to submit bids for that work. It's undisputed that Mark Thompson Trucking did in fact submit rate sheets, submit bids to U.S. The lanes that Janice Casey was trying to find carriers for, that in multiple instances he submitted multiple bids, that he rebid the work when he was not first awarded a bid and that he continued to actively negotiate and renegotiate his rates with U.S. Silica to get that business. It is also undisputed that Janice Casey never actually offered any business to Mark Thompson Trucking. And that is the key here, that he is the one making the offer. She did not offer him any work. All she did was provide an opportunity for him to bid on that business. The record is also undisputed. It is prohibited. You said he could have worked for them or done work for them, but he couldn't solicit it. So are you saying that the solicitation is him supplying a bid? Yes, the solicitation is him formulating a bid for these routes, these routes that he had worked while he was under contract with QTS and continuing to rebid those when his initial bids were rejected. But each time he did rebidding, he was solicited by Ms. Casey? Yes, Janice Casey made the initial contact. Like I said, that's undisputed. And she was looking for Mark Thompson was looking for was U.S. Silica business. So at most Janice Casey solicited bids. Mark Thompson solicited business by responding to those requests. Well, in a couple of ways. One, yes, he actively negotiated for this business. Another thing was that he knew that these were the routes that he had driven under QTS. He made no effort to you know, those aren't available to me, but do you have something else, something that I haven't already done while under my contract? He went all in for the business that he already knew. And that's what violated the contract. Mark Thompson trucking throughout this has tried to paint this as he just passively accepted business that came from U.S. Silica. And QTS has never argued that he is not permitted to do that. He is permitted to passively accept because passive acceptance would not be solicitation. However, there is under the undisputed facts, there's just no way to conclude that he was a passive participant in this process. And he submitted bids. He renegotiated bids. He tried to get his bids lower. There's evidence on the after he was provided the business as perhaps a backup carrier that he continued to lower his bids to get moved higher up on U.S. Silica's carrier list. So it's just defies all logic to conclude that that was passive acceptance. And there's repeating that Janice Casey never offered him anything. There's nothing he could accept. If he's going to say he passively accepted business that fell in his lap, there has to be something for him to accept. And there just wasn't. There was Janice Casey sending out communications to all kinds of carriers saying, make me an offer. And Mark Thompson took her up on that and made her repeated offers in an effort to get that business. If I could, let me ask another question. I certainly understand your but when we look at restrictive covenant cases, does it matter whether your client suffered any harm or not? Is that an issue or no? It's so this particular contract sets out liquidated damages. So it's presumed that it's harmed because that is not work now that is being given to QTS. But that's kind of where I was going because it but for the appellee here. And if if US Silica was soliciting bids from a lot of trucking companies that assumed and QTS was doing work for him before that suggested somebody else other than appellee or QTS might have got the business. Yes, that is always a possibility. The key here is though two things. One, Kevin Koontz testified at trial that that QTS was harmed by this. And Mark Thompson acknowledged that he knew he would be bidding against QTS. So yes, there there's always the potential. I think in any case, there's always the potential that the business could could be some other company could swoop in and take that business. But what the non solicitation clause in this agreement is intended to do is, is to stop those carriers that QTS sort of fostered and developed from taking that business. There's really nothing that anybody can do about potential outside competitors coming in. But the purpose of this contract is to stop carriers that work from QTS from from taking that business. And Mark Thompson acknowledged that he knew he'd be bidding against QTS when he when he submitted these bids. With with all these undisputed facts, with it being undisputed that actually his current broker at the time he first started submitting these bids, and knowing that it was going to take him getting the lower bid and him rebidding it until he achieved that goal. There's really no other conclusion that can be drawn from those undisputed facts other than that he solicited this business. This conclusion is also supported by the first districts holding in the case of Tomei versus Tomei, which has been cited by by both parties, and was cited by this court and its initial ruling on this case. And in that case, the court distinguished between general advertisement on the one hand, and direct solicitation of a customer known by the solicitor to have a direct need on the other hand. In that case, the court did find solicitation occurred, even though the defendant appellant in that case had sent out mass mailings to all kinds of potential customers. Because in that case, the court found that those mass mailings, even though it was 800 mailings sent out to various potential clients, they specifically targeted companies with insurance policies set to expire, the defendant appellant in that case being an insurance company. And most importantly, they culled that mailing list to remove other customers, other known customers of their former company, but didn't remove all of the customers. So in that case, the court found that the defendant appellant had engaged in calculated conduct that belied their intention that or their contention that it was mere advertisement. Similarly here, Mark Thompson Trucking targeted U.S. Silica. He had the opportunity to avoid lanes that he had hauled under his contract with QTS and to focus on other lanes, but he failed and refused to do so. He admitted that he never approached U.S. Silica and said, I can't bid on these lanes, but let me know if you have something else. He never met with anybody at U.S. Silica to let them know that he would be he didn't reach out to them. Isn't that I mean, he isn't the one that went to them and said, I want your business, but I have an issue because I have been doing work for QTS. I mean, isn't that part of the problem? And even part of the difference with Tomei is that he, he didn't go to them. They came to him and, you know, so then if they offer him something, which even an invitation to do business with them, isn't that, you know, he's not setting the criteria, the company who's come to him is. They're set. So yes, Janice Casey is the first one to make contact with him. But this court has already rejected that being determinative of this issue. So the question, the focus is, is on how Mark Thompson trucking responded, what his contact, what his conduct was in response to that initial request for bids. And he did not say, no, no, I can't do those routes, but I could do these other routes. He didn't, his reaction was to just go all in and submit as many bids as it took to get that business. So it, so there's that the focus needs to be on Mark Thompson's conduct because he is the one subject to this non solicitation clause and his conduct was clearly conduct and active pursuit of this business opportunity. The other thing is, is with there's, there's no real reason to, to say that because Janice Casey perhaps solicited Mark Thompson trucking that he also can't engage in solicitation. There's no authority that says you can really have only one solicitor. They, they both testified that their negotiations were constant back and forth with each other. There is no reason, there's no real legal authority to state that just because she was the one that contacted him and perhaps engaged in solicitation for bids that he could not, his conduct could not also rise to the level of solicitation of their business. And that's what the facts in this case demonstrate. So going back to Tomei, if we're looking at the distinction between general advertisement and direct solicitation, I think it's more appropriate to characterize Janice Casey's conduct as the general solicitation, because she was just looking for trucks. She didn't really care where they came from. Mark Thompson trucking engaged in the targeted solicitation. He testified he was interested when Janice first contacted him. He, his, his exact quote was, boy, this would be a good outfit to get. He knew what this opportunity was and he pursued it. That's what all of the the only reasonable conclusion to draw from this is that he solicited U.S. Silica. And in that regard, the trial court's conclusion otherwise was an error and, and should be reversed by this court. Those are my remarks. If, if the court has any other questions, I'm happy to ask, answer them. But at this point, that is, that is what I have to say. Okay. Any further questions? No. Mr. Kelleher. Good afternoon, Your Honors. Christopher Kelleher for the appellee, Mark Thompson trucking. Trying to overturn a trial verdict is a daunting task. The manifest weight of the evidence standard is unforgiving, more so when the evidence is clearly and unequivocally stacked against the appellant, as it is here. The trial court's explicitly factual findings doom quality from the outset. The trial court found as a matter of fact that the solicitation was by U.S. Silica, not Thompson. The court further found Thompson's subsequent bid submissions were made only in response to U.S. Silica's requests. These evidence, these findings, excuse me, can hardly be called unreasonable, arbitrary, or not based on the evidence. Indeed, the record is clear that U.S. Silica's desires for a relationship with Thompson were unrequited. U.S. Silica not only made the first overture, but every subsequent one as well. Meanwhile, Thompson was ambivalent. When his bids were rejected or the bids languished, he did nothing, completely unconcerned. It was always U.S. Silica that rekindled the dialogue. The record thus lacks any affirmative action by Thompson. This is the antithesis of solicitation. Indeed, this court in the first appeal defines solicitation as, quote, taking some affirmative measures. And this definition eviscerates quality's second appeal. Well, let me ask you, because opposing counsel says submitting bids is affirmative action, soliciting the business. Yeah, I want your business. Here's my bid. What do you say to that? And on that regard, what's our standard of review on that? Opposing counsel says it's a question of law whether this conduct, the conduct's undisputed and whether it amounts to solicitation. Or I gather from your opening remarks that your position is our standard of review is manifest way to the evidence. Yes, Justice Smith, if I can answer the second point first, it is the manifest weight of the evidence. And that is based on just based on the fact that this was a trial. It was a bench trial. And not to sound flip, but if this basically what was the what was the point of your honors reversing in the first instance? Why have a trial? This was just a question of law. The court in the first appeal could have just resolved this one way or another. And so there is solicitation or not. So this was obviously a question of fact that your honors reversed the first time around for a trial. And we had a trial and and opposing counsel, their brief, they cited four cases and we dismantled those cases. Counsel with due respect doesn't cite a single case saying de novo standard for cases involving a bench trial. And none exists. So to answer your question, yes, it is a it is a manifest way to the evidence standard. Justice Doherty did an extensive examination, obviously a 12 page opinion and repeatedly noted as a matter of fact on various points. So so the opinion is obviously very fact intensive and he witnessed the demeanor of the witnesses. So it should be a manifest way to the evidence standard. As your honors first first question, the whole context has to be seen here. And and what we have here is Janet Casey of Thompson's phone number. She then cold calls Mr. Thompson. She invites Thompson to meet. She goes to Thompson's office. She repeatedly asked for revised bids and repeatedly asks about the status of Thompson's trucks. So admittedly, Mark Thompson responds to these requests. But but that's that's as far as we go. And and that is where I would respectfully disagree with with my colleague, because here the every time Thompson does something, it's it's not an action, but it's a reaction. And it's a reaction to US reached out in the first in the beginning. And then the remainder of the dialogue was driven by Thompson. We would be in a tougher position. I would acknowledge that. But that's not the case at all. These facts couldn't be cleaner in the sense that that every step of the way, it's Janet Casey, Janice Casey, who's who's driving this. And Thompson is ambivalent every time, whether it's because he's busy or has other customers or is not particularly interested or keen and working with us. So I'm not sure but but the evidence is very clear. And it was not contradicted at trial that Mark Thompson was was ambivalent and only responded when when questioned or in what made there were inquiries from US silica. Moving to the next point precluding a reversal, quality drafted this contract. It's a point that quality has simply tried to try to evade, but it's the reality of the situation. And quality solicitation provision couldn't be narrower. It simply instructs, as Justice Schmidt acknowledged, that Thompson quote will not solicit traffic. So this provision doesn't prohibit Thompson from working with a quality customer, negotiating with a quality customer, or submitting proposals to a quality customer who solicited Thompson. A quality likely wishes it had strengthened its solicitation clause. We aren't dealing with the contract quality wishes it wrote, but rather the one it actually did. And that contract contains a meager, and under these facts, ineffectual solicitation clause. Equality now seeks help from the court to save it from its own drafting shortcomings. The court should decline to do so, especially given the manifest way. So this was a one sided pursuit by US silica. And the trial court's 12 details each step in the Thompson US silica dialogue. The verdict is a sound one and shouldn't be disturbed. Finally, I will conclude if there are no other questions, point out that the district court again noted that this was a very fact intensive analysis. The court's exact words, quote, this is an intensive examination of the facts. And it concludes as a matter of fact, that there was no solicitation. Again, the record is very clear. And this trial court's opinion was a sound one. And we would ask that the court affirm. And if there are no further questions, I thank you for your time. Any further questions? Thank you, Mr. Kelleher. Thank you. Miss Weiss, any rebuttal? Is your microphone, your microphone is muted. Sorry, I was trying not to be distracting. Um, I would like to start by answering counsel's questions of well, if this is a matter of law, why have a trial at all? And the simple answer to that is that was procedurally the only way to for summary judgment. It was granted, this court reversed it, quality transportation did not move for summary judgment. So at that point, there's really no way to resolve the matter except to have a trial. There's no other mechanism to get to a resolution in this case than to go ahead and have a trial. With regard to the standard of review, it is this is a breach of contract claim. The ultimate question here is did Mark Thompson trucking breach its contract? That's a question of law. It's simple. Council has stated that I haven't cited a single case that stands for the proposition of de novo review in a bench trial. But actually, counsel has provided that case in its case of that it cited in its brief and responsive, I can be gross that ended a bench trial, the court had some discussion in that case, the Supreme Court had some discussion in that case about the standard of review, noting that the parties one party was arguing for manifest weight, the other party was arguing for clearly erroneous. And the court said, Well, it's not that simple. The factual determinations of the subject to manifest review, but the legal conclusions are subject to de novo review. And that's, that's what we have. In this case, we have did Mark Thompson, breach the contract by soliciting us silica. And when all other facts are undisputed, what's at issue in this case is the court's legal, the trial court's legal conclusion. So this court reviews that under a de novo standard. As I've said before, there's there's no dispute that Janice Casey initiated this this contact. Mark Thompson trucking and the trial court to an extent has said well, but each conduct each future contact was also initiated by Janice Casey. But the testimony of the parties at trial belies that conclusion, because as Janice Casey stated that they were back and forth constant back and forth. So it wasn't that she initiated each interaction, it was that it was one negotiation process. Mark Thompson's failure to follow up or to initiate after his bids languished is simply that there's nothing for him to do until us silica accepts or rejects his bid. It's that's how the negotiation works. He makes an offer and waits to see if it's accepted or rejected. Once it's rejected, he makes another offer. And it's this process to say that he wasn't actively engaged in that process is just a misstatement of the facts and unreasonable conclusion to draw. Well, let me ask you a quick question about that. And so if his bid was when his bid was rejected, did he then sua sponte issue, submit another bid or did us silica request another bid? So Janice Casey's testimony on that point is is sort of a little of both she might say, you know, your bid is not in the ballpark. And if you want the work, you're going to have to get in the ballpark. She did also say sometimes she would go back and say, you've got to or try again. And I think in one instance, she did say that she went back to Mark Thompson with a specific counter offer. The interesting thing about about that instance is she, she characterized it as a counter offer, which implies that she went back to him with a with an amount with, we won't accept this, but we'll accept this. His response was to further counter, which means he rejected the actual offer that she made and went back again with a new offer. So. So to answer your question, it could happen in a number of different ways, which just further supports this, this concept that this is just an ongoing negotiation between these two parties. Thank you. The, the question of this being a one-sided pursuit or the statement made by council that this was a one sided pursuit by U.S. Silica is also contrary to the evidence. If it were one sided, it would have ended with, with Janice Casey requesting for the bid. As soon as Mark Thompson submitted bids, it became a two-sided conversation conversation. And he became an active participant in that. This required active participation by Mark Thompson. Again, Janice Casey never made an Council has not been able to point to a single time where Janice Casey made an offer that could be just simply accepted without further action by Mark Thompson. The one, didn't you just say a couple of minutes ago that she did. She made that one counter offer. Yes. So well, that counter offer is an offer, right? And it is an offer, but his offer was the initial offer. She made a counter and he rejected it and made his own counter offer. So he never passively accepted anything. There was no instance on the record where he passively accepted anything that U.S. Silica provided to him. And I see that my time is up. So unless there are other questions, I have one more question. When you say that, you know, if he were passively accepted her solicitation, then, you know, everything would have been okay. But if she said, you know, come to work for me and left it at that, under that scenario, he couldn't say, well, where do I come or what time do I get there? Or, you know, so I mean, it sounds to me like you're saying that if he has any questions or input or anything, then that violates the terms of the non-solicitation agreement. And I just, I guess I don't understand how, you know, that is possible, you know, where he's not seeking work. He's not saying, hey, I want to come to work for you tomorrow. They're saying, we want you. And if he has any questions or anything, you're saying that that then changes the nature of it. It makes him a solicitor. Is that or am I missing a big chunk of what you're arguing? So I agree. If US Silica makes him an offer and he takes it, that's not solicitation. But if, when I'm hearing you say Janice Casey just says, hey, it might be nice if you come work for us. As soon as they get into negotiation of the terms and he is calling the shots, so to speak, as far as what his terms are going to be, then it becomes solicitation. If Janice Casey had said, come drive this route for us. We're paying, you know, we need trucks to drive from Utica to Rochelle. We're paying $8.50 a ton. Take it. And he said, that sounds great. Let's do it. I think we're in a very different position here, but that's not what happened. All right. But following up on that, if you should have said, I'll pay you $8.50 a ton, you know, come do this. And he'd have said, can't do it for that, but I'll do it for $9.50 a ton. What's your position on that? I think he's getting into solicitation. I think he's getting into actively negotiating. I think that is a little bit harder case, but I think that is solicitation. But again, it started with an offer from U.S. Silica. And in this case, we have no starting with an offer from U.S. Silica. We have starting with offers from Mark Thompson Trucking. He's the one that made the initial offer in each case. What in your contract prohibits negotiation? The non-solicitation. So the position being that his active negotiation is solicitation, the parties have agreed on the definition of solicitation that we're going to use. And it uses that language, active pursuit of business. And his negotiations in this case are active pursuit of a business opportunity. Okay. Are there any other questions? No. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision. Thank you, your honors. Thank you, your honors. Thank you. The court will stand in recess until nine o'clock tomorrow morning.